## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| MARGARET LONG, an individual residing in Augusta, Maine | ) ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action |
| v. | ) | Docket No. 1:09-cv-592 |
| | ) | |
| FAIRBANK FARMS, INC., a foreign Corporation; FAIRBANK RECONSTRUCTION CORP., d/b/a FAIRBANK FARMS, a foreign corporation, | ) ) ) ) ) | |
| Defendants and Third-Party Plaintiffs, | ) ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREATER OMAHA PACKING COMPANY, INC.,  a foreign corporation, | ) ) ) | |
| Third-Party Defendant | ) | |

### THIRD-PARTY COMPLAINT AND DEMAND FOR JURY TRIAL

### WITH INDEPENDENT CLAIMS PURSUANT TO RULES
### 14 AND 18 OF THE FEDERAL RULES OF CIVIL PROCEDURE

The Defendants/Third-Party Plaintiffs Fairbank Farms, Inc.[1] and Fairbank Reconstruction Corp. *d/b/a* Fairbank Farms (collectively referred to herein as "Fairbank"), by its undersigned counsel, hereby complains against Greater Omaha Packing Company, Inc. ("GOPAC") as follows:

---

[1] Although Fairbank Reconstruction Corp. does business as Fairbank Farms, "Fairbank Farms, Inc.," as identified in the caption to Plaintiff's Complaint, is not a legal entity and should be dismissed as a party to this proceeding.

1

## INTRODUCTION

1.      Fairbank, a New York corporation with a principal place of business in Ashville, New York, was served with a Complaint in this matter filed by Margaret Long on or about November 20, 2009 in the United States District Court for the District of Maine.

2.      In her Complaint, Plaintiff contends that on or about September 23, 2009, she consumed ground beef she had purchased at the Shaw's grocery store in Augusta, Maine the preceding week.

3.      Plaintiff contends that she fell ill on September 26, 2009, following her consumption of this ground beef, with symptoms consistent with an *E. coli* O157:H7 infection, and that she suffered injuries as a result.

4.      Plaintiff contends that the ground beef that she consumed was manufactured, sold and/or distributed by Fairbank.

5.      Plaintiff asserts claims of strict liability, breach of warranties and negligence against Fairbank.

6.      Fairbank denies the allegations contained in Plaintiff's Complaint.

## BACKGROUND

7.      Fairbank is in the business of processing and selling ground beef.

8.      All ground beef sold by Fairbank is processed by the company in Ashville, New York, using raw beef trim which is manufactured and supplied by other beef packing establishments.  Fairbank's suppliers assure Fairbank that all

such beef trim has been properly sampled and tested (pursuant to Fairbank's specifications) for *E. coli* O157:H7 and that those tests have been negative.

9.      GOPAC, a Nebraska corporation with its principal place of business in Omaha, Nebraska, operates a beef slaughter and fabrication establishment which manufactures and supplies raw beef trim to Fairbank and other ground beef processors located throughout the United States.

10.     GOPAC understood at all times relevant hereto, including the time it manufactured and supplied raw beef trim to Fairbank, that Fairbank would use GOPAC's raw beef trim to process ground beef products for human consumption.

11.     Fairbank is an affiliate of American Foodservice Corporation and American Fresh Foods.

12.     On or about February 5, 2009, GOPAC provided Fairbank with a signed "Product (Raw Material) Guarantee" (hereinafter referred to as the "Guarantee"), whereby GOPAC guaranteed, in relevant part, that it would:

> . . . indemnify and hold harmless American Foodservice Corporation and American Fresh Foods, and its' affiliates [Fairbank], their Officers, Directors, employees and agents (herein referred to as "Buyer") harmless from all claims, damages, causes of actions, suits, proceedings, judgments, charges, losses, costs, liabilities and expenses (including attorneys' fees) arising from any products (raw materials) as delivered to Buyer by [GOPAC], that do not comply with the provisions of the Buyer's Raw Material Specifications or that are caused by the negligence or intentional misconduct of [GOPAC], its' Agents and employees.

13.     In addition to requiring adherence to each of the provisions contained within Fairbank's Raw Material Specifications, among other things, the

Guarantee also required GOPAC to comply with all regulatory and statutory laws and industry practices for slaughter and fabrication of beef, and to deliver only raw materials that were "[n]ot adulterated or misbranded," and which could be legally "introduced into interstate commerce."

14.     As an interstate supplier of raw beef trim and other beef products, GOPAC is subject to federal regulation and oversight by the United States Department of Agriculture and its Food Safety Inspection Service (collectively referred to as "USDA"),

15.     In September 2009, and at all times relevant to Plaintiff's Complaint, GOPAC manufactured and supplied raw beef trim to Fairbank pursuant to the aforementioned Guarantee.

16.     Specifically, on September 11, 2009, GOPAC manufactured and supplied raw beef trim to Fairbank which was used by Fairbank to process ground beef products on September 14, 15 and 16 2009.

17.     In mid-October of 2009, the Centers for Disease Control (CDC), the USDA, and various state and local public health departments began investigating a cluster of *E. coli* O157:H7 infections in New England.

18.     On October 31, 2009, based upon a preliminary analysis of epidemiological data collected by CDC which suggested a possible association between some cases of *E. coli* O157:H7 illnesses and ground beef, Fairbank issued a voluntarily recall of 545,699 pounds of ground beef products which had been processed at its Ashville, New York facility on September 14, 15 and 16, 2009.

4

19.    The ground beef subject to the October 31, 2009 recall was processed by Fairbank using raw beef trim manufactured by GOPAC on September 11, 2009.

20.    REDACTION – INFORMATION REDACTED SUBJECT TO APRIL 20, 2010 CONFIDENTIALITY AGREEMENT AND ORDER.

21.    REDACTION – INFORMATION REDACTED SUBJECT TO APRIL 20, 2010 CONFIDENTIALITY AGREEMENT AND ORDER.

22.    In addition to supplying Fairbank with raw trim, GOPAC also supplied raw beef to Culver City, a beef processor located in California, which used GOPAC beef trim to process ground beef on September 22, 2009.

23.    The ground beef processed by Culver City on September 22, 2009 was subsequently tested by USDA and was found to contain *E. coli* O157:H7.

24.    The *E. coli* O157:H7 found in Culver City's ground beef (manufactured with GOPAC trim) was a genetic match to the *E. coli* O157:H7 strain associated with the cluster of infections in New England.

25.    The specific strain of *E. coli* O157:H7 which prompted the October 31, 2009 Fairbank recall and which was also found by USDA in the Culver City ground beef sample originated from raw beef supplied by GOPAC.

26.    On November 9, 2009, the USDA issued a written notice to GOPAC announcing that the USDA was launching a comprehensive investigation into GOPAC's operations because GOPAC had been identified by the USDA as

having supplied raw beef to customers whose products tested positive for *E. coli* O157:H7 on at least seven (7) separate occasions in the preceding 120 days.

27.     The USDA's investigation, to identify GOPAC's role in supplying contaminated beef to Fairbank and others during the summer and fall of 2009, spanned eight weeks (lasting from November 17, 2009 to January 17, 2010).

28.     On January 21, 2010, following the completion of its investigation, USDA issued GOPAC a Notice of Intended Enforcement (threatening to shut down GOPAC's facilities) because of GOPAC's numerous recurring violations of federal law and regulation.  According to USDA, these recurring violations left the agency without adequate assurance that GOPAC was capable of producing product that was not adulterated or otherwise injurious to human health.

## JURISDICTION

29.     Fairbank repeats and reasserts the allegations contained in Paragraphs 1 through 28 as if fully set forth herein.

30.     Complete diversity of citizenship exists between the parties and the amount in controversy, exclusive of interest and costs, exceeds the statutory limit of $75,000.00.

31.     With approximately $1.2 billion in annual sales, GOPAC ranks as one of the largest privately-owned beef slaughter and fabrication companies in the United States.

32.     At all times relevant hereto, GOPAC has marketed its beef products throughout the United States and globally.

33.     At all times relevant hereto, GOPAC has had in place a national and global distribution network.

34.     Upon information and belief, at all times relevant hereto, GOPAC has known or has had reason to know that its beef products have been sold in the State of Maine.

35.     Upon information and belief, at all times relevant hereto, GOPAC has marketed or sold its beef products to beef processing companies that sell their ground beef products throughout the United States, including the State of Maine.

36.     Upon information and belief, at all times relevant hereto, GOPAC has known or has had reason to know that its beef products have been sold to beef processing companies that sell their ground beef products in the State of Maine.

37.     Upon information and belief, at all times relevant hereto, GOPAC has marketed or sold its beef products to suppliers and distributors, both national and regional, who sell their products in the State of Maine.

38.     Upon information and belief, at all times relevant hereto, GOPAC has known or had reason to know that its beef products have been sold to suppliers and distributors, both national and regional, who sell their beef products in the State of Maine.

39.     Upon information and belief, at all times relevant hereto, GOPAC has made a purposeful effort to serve a nationwide United States Market, including the State of Maine, either directly or through distributors and beef

processing companies throughout the United States with whom it conducts business, including Fairbank.

40.    Upon information and belief, at all times relevant hereto, GOPAC understood that Fairbank served an East Coast Market including New England and the State of Maine and that Fairbank ground beef products would be sold to retailers and vendors within the State of Maine.

41.    Maine's long-arm statute, 14 M.R.S. §704-A(1) authorizes the Court's jurisdiction over the subject action as the consequences of the alleged tortious conduct occurred within the State of Maine.

42.    Venue is appropriate in the United States District Court for the District of Maine, Portland, pursuant to 28 U.S.C. §1391(a), because a substantial part of the events giving rise to the claims occurred in this district, and pursuant to the Court's order of April 27, 2010 reassigning this case to Judge George Z. Singal and Magistrate Judge John H. Rich III because of related case 2:10-CV-60.

## THIRD-PARTY CLAIMS

### COUNT ONE
### *Contribution And Indemnity*
### *On Plaintiff's Strict Products Liability Claim*

43.    Fairbank repeats and reasserts the allegations contained in Paragraphs 1 through 42 as if fully set forth herein.

44.    The Plaintiff Margaret Long alleges that the beef product manufactured, distributed and/or sold by Defendant/Third-Party Plaintiff Fairbank

was defective and unreasonably dangerous at the time it left Fairbank's control because it contained *E. coli* O157:H7, and that the food product was delivered to the Plaintiff without any change in its allegedly defective condition.

45.    The Plaintiff further alleges that as the result of her alleged consumption of ground beef, she suffered injury and damages.

46.    Fairbank denies any liability in this matter.  If Fairbank is found liable to the Plaintiff, however, it shall be as a direct and proximate result of the condition of the raw beef trim sold to Fairbank by the Third-Party Defendant GOPAC, which Fairbank used to process its ground beef.

47.    Third-Party Defendant GOPAC was responsible for the safe processing, packaging and distribution of the raw beef trim.

48.    GOPAC knew and understood that the raw beef trim supplied by GOPAC to Fairbank would be incorporated into Fairbank's ground beef and would be sold for human consumption.

49.    Any alleged defect in the ground beef product manufactured, distributed and/or sold by Fairbank was as the result of the defective raw beef trim supplied by GOPAC which alone caused the harm to the Plaintiff.

50.    With the exception of grinding, which does not change the condition of the raw materials in any way material to the issues here (*i.e.*, the underlying presence of *E. coli* O157:H7), the raw beef trim supplied by GOPAC was unchanged by Fairbank from the condition in which it was received.

51.     Fairbank is entitled to common law and contractual contribution and indemnification against the Third-Party Defendant GOPAC for any sums that the Fairbank is adjudged liable to pay the Plaintiff.

## COUNT TWO
### Contribution And Indemnity
### On Plaintiff's Breach of Warranty Claims

52.     Fairbank repeats and reasserts the allegations contained in Paragraphs 1 through 51 as if fully set forth herein.

53.     The Plaintiff Margaret Long contends that the Defendant/Third-Party Plaintiff Fairbank warranted that its product was fit for human consumption and not otherwise injurious.

54.     The Plaintiff further contends that the ground beef sold by Fairbank was contaminated with *E. coli* O157:H7 and would not pass without exception in the trade, and that in placing the product in the market Fairbank breached the implied warranty of merchantability.

55.     The Plaintiff contends that the ground beef product sold by Fairbank was not fit for the uses and purposes intended by Fairbank, that is consumption by the public, and that Fairbank therefore breached the implied warranty of fitness for its intended use.

56.     The Plaintiff contends that Fairbank had a duty to manufacture and sell food that was fit for, and safe to the extent contemplated by a reasonable and ordinary consumer, and alleges that Fairbank breached that duty.

57.     The Plaintiff contends that because the food sold by Fairbank was not fit for human consumption, was not reasonably safe in design and construction, and was unsafe to an extent beyond that contemplated by the ordinary consumer, that Fairbank breached both express and implied warranties and is liable to the Plaintiff for the harm proximately caused by her consumption of the ground beef product.

58.     Fairbank denies any liability in this matter.  If Fairbank is found liable to the Plaintiff, however, it shall be as a direct and proximate result of the breach of implied and express warranties by the Third-Party Defendant GOPAC.

59.     Third-Party Defendant GOPAC knew that the raw beef trim supplied to Fairbank would be incorporated into Fairbank's ground beef and would be sold for human consumption.  In the event it is determined that Fairbank's ground beef products contained *E. coli* O157:H7, the contamination originated from the GOPAC Raw Trim, and GOPAC breached its express and implied warranties by manufacturing and supplying raw trim which was adulterated and misbranded.

60.     Fairbank is entitled to common law and contractual contribution and indemnification against the Third-Party Defendant GOPAC pursuant to Maine's version of the Uniform Commercial Code, and/or whatever version may be found applicable, for any sums that Fairbank is adjudged liable to the Plaintiff for the alleged breach of any express or implied warranties.

## COUNT THREE
### *Contribution And Indemnity*
### *On Plaintiff's Negligence Claim*

61.    Fairbank repeats and reasserts the allegations contained in Paragraphs 1 through 60 as if fully set forth herein.

62.    The Plaintiff Margaret Long contends that Defendant/Third-Party Plaintiff Fairbank had a duty to exercise reasonable care in the preparation and sale of its food products, and to ensure that it engaged in the safe preparation of food products including complying with all applicable health regulations.

63.    The Plaintiff contends that Fairbank breached this duty and that as the proximate result of this breach of duty, the Plaintiff sustained injury.

64.    Fairbank denies any liability in this matter.  If Fairbank is found liable to the Plaintiff, however, it shall be as the direct and proximate result of the negligence and/or fault of the Third-Party Defendant GOPAC.

65.    Third-Party Defendant GOPAC was responsible for the manufacture, processing, distribution and/or sale of the raw beef trim incorporated by Fairbank into its ground beef.  GOPAC knew and understood that the raw beef trim supplied to Fairbank would be incorporated into Fairbank's ground beef and would be sold for human consumption.

66.    Third-Party Defendant GOPAC had a duty to exercise reasonable care in the processing and sale of its raw beef trim and to employ safe processing and handling measures to reduce the risk of food-borne pathogens including *E. coli* O157:H7 in its product.   In the event it is determined that Fairbank's ground

12

beef products contained *E. coli* O157:H7, the contamination originated from the GOPAC Raw Trim, and GOPAC breached its duties by manufacturing and supplying raw trim which was adulterated and misbranded.

67.     Fairbank is entitled to common law and contractual contribution and indemnification against the Third-Party Defendant GOPAC for any sums that Fairbank is adjudged liable to pay the Plaintiff.

WHEREFORE, the Defendant/Third-Party Plaintiff Fairbank demands judgment against the Third-Party Defendant Greater Omaha Packing Co., Inc. for contribution and indemnification, and for any and all sums which may be adjudged as against Fairbank in favor of the Plaintiff Margaret Long, plus costs and fees and such further relief as the Court deems just and proper.  Fairbank's entitlement to costs and fees and the amount of the same shall be determined by the Court subsequent to any settlement, verdict or judgment in this action.


## INDEPENDENT CLAIMS

### COUNT FOUR
### *Breach of Contract*

68.     Fairbank repeats and reasserts the allegations contained in Paragraphs 1 through 67 of the Third-Party Complaint as if fully set forth herein.

69.     On or about February 5, 2009, Fairbank entered into the aforementioned Guarantee with GOPAC which governed the sale of the GOPAC raw beef trim to Fairbank.

70.     Pursuant to the Guarantee, GOPAC was obligated and had a duty to provide Fairbank with raw beef trim that was not adulterated or misbranded, and which could be legally introduced into interstate commerce.

71.     On September 11, 2009, GOPAC manufactured, sold and shipped raw beef trim ("GOPAC Raw Trim") to Fairbank and/or for Fairbank's use.

72.     In the event it is determined that Fairbank's ground beef products contained *E. coli* O157:H7, the contamination in the ground beef originated from GOPAC Raw Trim, GOPAC breached the aforementioned contractual duties and Guarantee, and GOPAC's breach was the direct and proximate cause of Fairbank's voluntary recall.

73.     Following the announcement of the October 31, 2009 recall, consumers in numerous states, including the Plaintiff in this action, alleged they suffered *E. coli*-related injuries and damages as a direct and proximate result of consuming ground beef products processed by Fairbank using GOPAC Raw Trim.

74.     As of the date of this pleading, Fairbank has been sued in separate actions in the United States District Court for the District of Maine (*Alice Smith v. Fairbank Farms, Inc. and Fairbank Reconstruction Corp.,* Case No. 10-CV-0060), and in the United States District Court for the District of Massachusetts (*Linda Pieroni, et al. v. Fairbank Farms, Inc. and Fairbank Reconstruction Corp.*, Case No. 1:10-CV-10239), as a direct and proximate result of processing and selling ground beef derived from GOPAC Raw Trim. Fairbank has also been threatened with, and potentially faces, numerous additional lawsuits.

14

75.     As of the date of this pleading, and as a direct and proximate result of processing and selling GOPAC Raw Trim, Fairbank has incurred substantial attorney fees and expenses investigating individual claims, negotiating settlements of claims, defending lawsuits and conducting extensive discovery.  Fairbank will incur extensive costs and expenses, including attorney fees, in the future.

76.     As of the date of this pleading, and as a direct and proximate result of processing and selling GOPAC Raw Trim, Fairbank has incurred substantial costs and expenses associated with the recall of ground beef products processed by Fairbank using GOPAC Raw Trim.

77.     As of the date of this pleading, and as a direct and proximate result of processing and selling GOPAC Raw Trim, Fairbank has also incurred significant damages, including but not limited to, business interruption, recall costs, lost profits (both past and future), loss of goodwill, and costs, expenditures as well as attorneys fees related to the defense of existing and anticipated claims.

78.     In the event it is determined that Fairbank's ground beef products contained *E. coli* O157:H7, the contamination originated from GOPAC Raw Trim, and GOPAC's breach of its contractual duties and Guarantee was the direct and proximate cause of the alleged *E. coli* O157:H7 illnesses, the resulting product recall and the subsequent and resulting damages to Fairbank.

WHEREFORE, Fairbank requests that the Court enter judgment in favor of Fairbank in an amount to be determined at trial and against GOPAC for costs and expenses incurred in the aforementioned recall, lost profits and damage to

Fairbank's professional reputation, costs, expenditures and attorney's fees for the defense and/or settlement of all past and future claims related to illnesses caused by the presence of *E. coli* O157:H7 in the GOPAC Raw Trim, and for any such other relief as the Court deems just and proper.  Fairbank's entitlement to attorney's fees and the amount of the same shall be determined by the Court subsequent to any settlement, verdict or judgment in this action.

## COUNT FIVE
### *Breach of Express Warranty*

79.    Fairbank repeats and reasserts the allegations contained in Paragraphs 1 through 78 of the Third-Party Complaint as if fully set forth herein.

80.    GOPAC manufactured, sold and shipped GOPAC Raw Trim to Fairbank and/or for Fairbank's use.

81.    At the time of the sale, GOPAC was a merchant with respect to the GOPAC Raw Trim sold to Fairbank.

82.    GOPAC expressly warranted through affirmations of fact, promises and/or descriptions, including, but not limited to, the Guarantee, that the GOPAC Raw Trim would not be adulterated or misbranded, and such expressions became part of the basis of the parties' bargain.

83.    In the event it is determined that Fairbank's ground beef products contained *E. coli* O157:H7, the contamination originated from GOPAC Raw Trim, and the GOPAC Raw Trim did not conform to the aforesaid express warranties, constituting a breach of such express warranties.

16

84.     On December 3, 2009, Fairbank provided formal written notice of the aforementioned recall and resulting claims relating to the consumption of ground beef products processed using GOPAC Raw Trim, while at the same time reserving all warranty, indemnification contribution and other rights.

85.     In the event it is determined that GOPAC Raw Trim contained *E. coli* O157:H7, GOPAC's breach of its warranties was the direct and proximate cause of the alleged *E. coli* O157:H7 illnesses, the resulting product recall and the subsequent and resulting damages to Fairbank.

WHEREFORE, Fairbank requests that the Court enter judgment in favor of Fairbank in an amount to be determined at trial and against GOPAC for costs and expenses incurred in the aforementioned recall, lost profits and damage to Fairbank's professional reputation, costs, expenditures and attorney's fees for the defense and/or settlement of all past and future claims related to illnesses caused by the presence of *E. coli* O157:H7 in the GOPAC Raw Trim, and for any such other relief as the Court deems just and proper.   Fairbank's entitlement to attorney's fees and the amount of the same shall be determined by the Court subsequent to any settlement, verdict or judgment in this action.

## COUNT SIX
### *Breach of Implied Warranty of Merchantability*

86.     Fairbank repeats and reasserts the allegations contained in Paragraphs 1 through 85 of the Third-Party Complaint as if fully set forth herein.

87.     GOPAC manufactured, sold and shipped GOPAC Raw Trim to Fairbank and/or for Fairbank use.

88.     At the time of the sale, GOPAC was a merchant with respect to the GOPAC Raw Trim sold to Fairbank.

89.     In the event it is determined that Fairbank's ground beef products contained *E. coli* O157:H7, then the contamination originated from GOPAC Raw Trim, and the GOPAC Raw Trim at the time it was delivered was not merchantable, constituting a breach of such implied warranties.

90.     On December 3, 2009, Fairbank provided formal written notice of the aforementioned recall and resulting claims relating to the consumption of ground beef products processed using GOPAC Raw Trim, while at the same time reserving all warranty, indemnification contribution and other rights.

91.     In the event it is determined that GOPAC Raw Trim contained *E. coli* O157:H7, GOPAC's breach of its warranties was the direct and proximate cause of the alleged *E. coli* O157:H7 illnesses, the resulting product recall and the subsequent and resulting damages to Fairbank.

WHEREFORE, Fairbank requests that the Court enter judgment in favor of Fairbank in an amount to be determined at trial and against GOPAC for costs and expenses incurred in the aforementioned recall, lost profits and damage to Fairbank's professional reputation, costs, expenditures and attorney's fees for the defense and/or settlement of all past and future claims related to illnesses caused by the presence of *E. coli* O157:H7 in the GOPAC Raw Trim, and for any such

other relief as the Court deems just and proper.   Fairbank's entitlement to attorney's fees and the amount of the same shall be determined by the Court subsequent to any settlement, verdict or judgment in this action.

## COUNT SEVEN
### *Breach of Implied Warranty of Fitness for a Particular Purpose*

92.    Fairbank repeats and reasserts the allegations contained in Paragraphs 1 through 93 of the Third-Party Complaint as if fully set forth herein.

93.    GOPAC manufactured, sold and shipped GOPAC Raw Trim to Fairbank and/or for Fairbank use.

94.    When the contract for sale was made, Fairbank purchased the GOPAC Raw Trim for the particular purpose of grinding and then reselling ground beef products processed with GOPAC Raw Trim for human consumption. GOPAC knew of this particular purpose.

95.    When the contract for sale was made, Fairbank was relying on GOPAC's skill and judgment to design, manufacture, select, furnish and/or sell GOPAC Raw Trim suitable for that particular purpose.   GOPAC had reason to know of this reliance.

96.    In the event it is determined that Fairbank's ground beef products contained *E. coli* O157:H7, then the contamination originated from GOPAC Raw Trim, and the GOPAC Raw Trim at the time it was delivered was not fit for the particular purpose in question.

97.     On December 3, 2009, Fairbank provided formal written notice of the aforementioned recall and resulting claims relating to the consumption of ground beef products processed using GOPAC Raw Trim, while at the same time reserving all warranty, indemnification contribution and other rights.

98.     In the event it is determined that GOPAC Raw Trim contained *E. coli* O157:H7, GOPAC's breach of its warranties was the direct and proximate cause of the alleged *E. coli* illnesses, the resulting product recall and the subsequent and resulting damages to Fairbank.

WHEREFORE, Fairbank requests that the Court enter judgment in favor of Fairbank in an amount to be determined at trial and against GOPAC for costs and expenses incurred in the aforementioned recall, lost profits and damage to Fairbank's professional reputation, costs, expenditures and attorney's fees for the defense and/or settlement of all past and future claims related to illnesses caused by the presence of *E. coli* O157:H7 in the GOPAC Raw Trim, and for any such other relief as the Court deems just and proper.   Fairbank's entitlement to attorney's fees and the amount of the same shall be determined by the Court subsequent to any settlement, verdict or judgment in this action.

## COUNT EIGHT
### *Indemnity*

99.     Fairbank repeats and reasserts the allegations contained in Paragraphs 1 through 98 of the Third-Party Complaint as if fully set forth herein.

100.   In the event it is determined that GOPAC Raw Trim contained *E. coli* O157:H7, Fairbank was free of wrongdoing with respect to the damages caused by the adulterated GOPAC Raw Trim, including, but not limited to, numerous *E. coli* O157:H7 illnesses and the recall of ground beef products processed by Fairbank using GOPAC Raw Trim.

101.   To the extent that Fairbank will be compelled to enter into settlement agreements with individuals and their families, or to pay any judgments resulting from litigation arising out of any complaints asserting bodily injury and damages from exposure to *E. coli* O157:H7, such damages will be incurred solely because of GOPAC's active wrongdoing, namely, GOPAC's breach of express warranties, breach of implied warranties, and breach of contract.

102.   Justice requires that GOPAC bear the damages incurred by Fairbank.

103.   To the extent that Fairbank is liable for damages to persons exposed to *E. coli* O157:H7, Fairbank is entitled to indemnification from GOPAC for any and all damages it has incurred or will incur.

WHEREFORE, Fairbank requests that the Court enter judgment in favor of Fairbank in an amount to be determined at trial and against GOPAC for costs and expenses incurred in the aforementioned recall, lost profits and damage to Fairbank's professional reputation, costs, expenditures and attorney's fees for the defense and/or settlement of all past and future claims related to illnesses caused by the presence of *E. coli* O157:H7 in the GOPAC Raw Trim, and for any such other relief as the Court deems just and proper.   Fairbank's entitlement to

attorney's fees and the amount of the same shall be determined by the Court subsequent to any settlement, verdict or judgment in this action.

Fairbank demands a jury trial on all issues.

Dated at Portland, Maine this 18th day of June, 2010.

/s/ Paul C. Catsos
Paul C. Catsos, Esq.
Attorney for Defendants and Third-Party Plaintiffs
Thompson & Bowie, LLP
P. O. Box 4630
Portland, ME  04112
(207) 774-2500


/s/ Shawn K. Stevens, Esq.
Ralph A. Weber, Esq.
Shawn K. Stevens, Esq.
Attorney for Defendants and Third-Party Plaintiffs
Gass Weber  Mullins, LLC
309 North Water Street
Milwaukee, WI 53202
Tel: (414) 224-7784

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2010, I electronically filed the Third Party Complaint with Independent Claims with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

> Peter C. Felmly, Esq.
> Drummond, Woodsum
> 84 Marginal Way, Ste. 600
> Portland, ME 04101
> *pfelmly@dwmlaw.com*

> William D. Marler, Esq.
> David Babcock, Esq.
> Marler Clark LLP
> 701 Fifth Avenue, Ste 6600
> Seattle, WA 98104
> *bmarler@marlerclark.com*

Dated: June 18, 2010

> */s/ Paul C. Catsos*
> Paul C. Catsos, Esq.
> Thompson & Bowie, LLP
> Three Canal Plaza
> P.O. Box 4630
> Portland, ME  04112
> (207) 774-2500
> pcatsos@thompsonbowie.com

> */s/ Shawn K. Stevens, Esq.*
> Shawn K. Stevens, Esq.
> Gass Weber Mullins, LLC
> 309 North Water Street
> Milwaukee, WI 53202
> Tel: (414) 224-7784
> stevens@gasswebermullins.com