UNITED STATES DISTRICT COURT
                              DISTRICT OF MAINE


| | | |
|---|---|---|
| MARGARET LONG, | ) | |
| | ) | |
|       Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:09-cv-592-GZS |
| | ) | **FILED UNDER SEAL** |
| FAIRBANK FARMS, INC., et al., | ) | |
| | ) | |
|       Defendants and | ) | |
|       Third-Party Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREATER OMAHA PACKING | ) | |
| COMPANY, INC., | ) | |
| | ) | |
|       Third-Party Defendant | ) | |

*************************************************************************

| | | |
|---|---|---|
| ALICE SMITH, | ) | |
| | ) | |
|       Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:10-cv-60-GZS |
| | ) | **FILED UNDER SEAL** |
| FAIRBANK FARMS, INC., et al., | ) | |
| | ) | |
|       Defendants and | ) | |
|       Third-Party Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREATER OMAHA PACKING | ) | |
| COMPANY, INC., | ) | |
| | ) | |
|       Third-Party Defendant | ) | |

# ORDER ON GOPAC'S MOTION TO STAY DECISION
# TO PERMIT SUPPLEMENTAL BRIEFING

Third-party defendant Greater Omaha Packing Company, Inc. ("GOPAC") moves to stay decision on its pending *Daubert* and summary judgment motions, and the pending summary judgment motion of the Fairbank Farms, Inc. third-party plaintiffs (collectively, "Fairbank"), to permit supplemental briefing with respect to new evidence that GOPAC contends is dispositive in its favor with respect to all of those motions: a March 21, 2011, multi-enzyme pulse field gel electrophoresis ("PFGE") test of a sample (an "isolate") taken from an individual in New Hampshire who became ill as a result of ingesting meat contaminated with *E. coli* O157:H7 during the same "Northeast Outbreak" that sickened the plaintiffs in the instant cases. *See* Motion To Stay Decision on Pending Motions and for Leave To Supplement Briefing on Pending Motions ("Motion To Stay") (Docket No. 185, *Long*; Docket No. 162, *Smith*). For the reasons that follow, the motion is ***DENIED***.

The instant motion was filed more than three months after the expiration of the discovery deadline on December 20, 2010, and more than two months after the expiration of the *Daubert* and dispositive motion deadline on January 10, 2011. *See* Docket No. 82, *Long*; Docket No. 67, *Smith*. Those deadlines already had been enlarged several times. *See id.* While the evidence in question is new, it is not material to the outcome of either the summary judgment or *Daubert* motions and, hence, does not justify the reopening of those motions, and the attendant prejudice to Fairbank, at this late stage in the litigation.

GOPAC argues that the new evidence vitiates Fairbank's case against it, *i.e.*, Fairbank's identification of GOPAC as the source of meat containing *E. coli* O157:H7 that Fairbank purchased

2

for processing into retail meat products, because it undermines Fairbank's contention that the strain of *E. coli* O157:H7 found in patients sickened in the Northeast Outbreak is a "genetic match" to a strain of *E. coli* O157:H7 found during routine regulatory testing of meat products manufactured by another GOPAC customer, Culver City Meat Company ("Culver City"). *See* Motion To Stay at 2-3; GOPAC's Reply Memorandum in Support of Motion To Stay Decision on Pending Motions and for Leave To Supplement Briefing ("Stay Reply") (Docket No. 190, *Long*; Docket No. 166, *Smith*) at 5-6.

The new evidence is not dispositive of Fairbank's summary judgment motion because that motion does not hinge on the validity of the Culver City theory. Fairbank seeks summary judgment on the basis of an alleged admission by GOPAC expert Gerald Zirnstein, Ph.D., that GOPAC was the probable source of the *E. coli* O157:H7 that contaminated Fairbank's retail meat products. *See* Fairbank's Motion for Summary Judgment (Docket No. 113; *Long*; Docket No. 91, *Smith*) at 2. That alleged admission, in turn, did not hinge on the Culver City theory but, rather, was made during Dr. Zirnstein's discussion of a wholly separate "trace-back" analysis. *See id.* at 5-6; Deposition of Gerald Zirnstein, Ph.D. ("Zirnstein Dep.") (Docket No. 113-4, *Long*; Docket No. 91-4, *Smith*), at 92-127. While Dr. Zirnstein subsequently agreed, in theory, that "the Culver City positive could be an important bit of evidence in trying to figure out where the bacteria came from . . . if it was the same clone[,]" Zirnstein Dep. at 128, his earlier alleged admission did not depend on the existence or validity of such a genetic match. Moreover, Dr. Zirnstein challenged the validity of the Culver City theory, indicating that it appeared to be based on flawed factual underpinnings. *See id.* at 130-31.

The new evidence is not dispositive of GOPAC's summary judgment motion because Fairbank contests that the March 21 testing is more accurate than previous testing by the Centers for

3

Disease Control and Prevention ("CDC") identifying a genetic match between Culver City and Northeast Outbreak isolates on the basis of a combination of two-enzyme PFGE testing and so-called "MLVA" testing. *See* Fairbank's Response Brief in Opposition to GOPAC's Motion To Stay Decision on Pending Motions and for Leave To Supplement Briefing on Pending Motions ("Stay Opposition") (Docket No. 187, *Long*; Docket No. 164, *Smith*) at 6-7. In addition, according to Fairbank, its expert, Dr. Lee Harrison, concluded that the March 21 multi-enzyme PFGE testing actually *confirms* that the Culver City and Northeast Outbreak isolates are from the same source. *See id*. at 7-8.[1] Thus, for purposes of summary judgment, it is clear that, were GOPAC permitted to supplement its motion to add the new evidence, Fairbank would be able to demonstrate that there are genuine issues of material fact regarding the level of accuracy of the March 21 testing results and their correct interpretation. Thus, summary judgment could not be granted to GOPAC on the basis of the new evidence.

Finally, the new evidence is not dispositive of GOPAC's motion to exclude the testimony of Fairbank's experts because (i) Fairbank's experts did not rely solely on the Culver City theory, *see, e.g*., Fairbank's Brief in Opposition to GOPAC's Motion To Exclude Expert Opinion (Docket No.

---

[1] Fairbank was unable to present an affidavit of Dr. Harrison to this effect because it did not receive the written report of Mansour Samadpour, Ph.D., who conducted the March 21 testing, until after 5 p.m. on March 29, 2011, the day that its response to the instant motion was due. *See* Stay Opposition at 1-2, 7-8. Although Dr. Harrison was attending a family event on the evening of March 29, he briefly reviewed GOPAC's submissions and communicated his comments orally to counsel for Fairbank. *See id*. at 2, 7-8. GOPAC offers the excuse that Dr. Samadpour had various pressing commitments that prevented him from getting a written report to GOPAC's counsel until 5:00 p.m. on March 29, at which time GOPAC immediately supplied Fairbank with the report. *See* Stay Reply at 1-3. Regardless, the fact remains that Fairbank did not receive the report until the 11th hour. In the circumstances, I accept that, if called upon to do so, Dr. Harrison would present an affidavit containing opinions consistent with those set forth in Fairbank's opposition to the instant motion. While, with its reply brief, GOPAC submits yet another supplemental report of Dr. Samadpour addressing and disputing Dr. Harrison's reported conclusions, *see* Addendum to Supplemental Expert Report of Mansour Samadpour, Ph.D. (Docket No. 190-12, *Long*; Docket No. 166-12, *Smith*), that report merely underscores the existence of disputed issues of material fact regarding the March 21 testing.

142, *Long*; Docket No. 119, *Smith*) at 2, and, (ii) while GOPAC's and Fairbank's experts dispute the meaning and interpretation of the various PFGE and MLVA test results, GOPAC's expert concedes that MLVA is a valid form of testing, *see* Supplemental Expert Report of Mansour Samadpour, Ph.D. (Docket No. 187-1, *Long*; Docket No. 164-1, *Smith*) at 2 ("The appropriate protocol is to conduct comprehensive subtyping before rushing to conclusions. The subtyping could include multi-enzyme PFGE [the new testing performed by Dr. Samadpour on March 21, 2011], *MLVA*, and genomic sequencing.") (emphasis added). The principles of *Daubert v. Merrell Dow. Pharms., Inc.*, 509 U.S. 579 (1993), do not require the exclusion of Fairbank's experts' Culver City-related testimony to the extent predicated on the results of a testing methodology different from that used by GOPAC's expert but equally appropriate. *See, e.g., United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002) ("*Daubert* does not require that the party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct. It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion.") (citation and internal quotation marks omitted).

    *SO ORDERED*.

## Sealing of This Order

I **DIRECT** the Clerk of the Court to seal this order when docketed. The parties shall notify me by noon on May 31, 2011, with due regard to the public's interest in access to court proceedings, whether this order contains any confidential information that should remain sealed and, if so, indicate explicitly what language is proposed to be redacted, and why. If I do not hear from the parties by noon on May 31, 2011, this order will be unsealed.

5

## *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to appeal the district court's order.*

Dated this 25th day of May, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge