UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MARGARET LONG, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:09-cv-592-GZS |
| | ) | |
| FAIRBANK FARMS, INC., et al., | ) | |
| | ) | |
| Defendants and | ) | |
| Third-Party Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREATER OMAHA PACKING | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| Third-Party Defendant | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| ALICE SMITH, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:10-cv-60-GZS |
| | ) | |
| FAIRBANK FARMS, INC., et al., | ) | |
| | ) | |
| Defendants and | ) | |
| Third-Party Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREATER OMAHA PACKING | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| Third-Party Defendant | ) | |

# ORDER ON FAIRBANK's MOTION TO ENJOIN
# AND GOPAC's MOTION FOR RELIEF

The Fairbank Farms, Inc. third-party plaintiffs (collectively, "Fairbank") move pursuant to the All Writs Act, 28 U.S.C. § 1651, and this court's inherent discretion and authority to enforce its own orders and manage discovery, to enjoin third-party defendant Greater Omaha Packing Company, Inc. ("GOPAC") and its counsel from violating the confidentiality orders entered in these cases by disclosing documents designated as "Attorney's Eyes Only" ("AEO"), regardless of the jurisdiction in which such documents are produced. *See* Fairbank's Motion To Enjoin GOPAC and Its Counsel From Violating the Court's Orders Limiting the Disclosure of Documents Designated "Confidential – Attorney's Eyes Only" ("Fairbank Motion") (Docket No. 191, *Long*; Docket No. 167, *Smith*). In a related motion, GOPAC seeks relief that includes (i) an injunction against Fairbank's asserted violation of this court's confidentiality orders by making blanket AEO designations, (ii) a declaration that Fairbank has waived AEO designations made on October 13, 2010, and (iii) a modification of the confidentiality orders entered in these cases. *See* Third-Party Defendant GOPAC's Motion for Affirmative Relief ("GOPAC Motion") (Docket No. 193, *Long*; Docket No. 169, *Smith*). For the reasons that follow, both motions are ***DENIED***.

## I. Fairbank Motion To Enjoin

Fairbank seeks to prevent GOPAC counsel from effectively vitiating AEO designations made pursuant to this court's confidentiality orders through the issuance of an injunction barring GOPAC's counsel from disclosing any such AEO documents to their clients regardless of the venue within which such documents are produced. *See* Fairbank Memorandum in Support of Fairbank's Motion To Enjoin GOPAC and Its Counsel From Violating the Court's Orders Limiting the Disclosure of

Documents Designated "Confidential – Attorney's Eyes Only" ("Fairbank Memo") (Docket No. 191-1, *Long*; Docket No. 167-1, *Smith*) at 7. Lawsuits stemming from the same *E. coli* O157:H7 "Northeast Outbreak" that sickened the plaintiffs in the instant cases have been filed in both New York and New Hampshire: *Cohen v. Fairbank Farms,* Albany County Index No. 4087-10 (N.Y. Sup. Ct.), and *Precourt ex rel. Black v. Fairbank Reconstruction Corp.*, Civil Action No. 1:10-cv-337-LM (D.N.H.). *See* Letter Decision and Opinion of the Court, *Cohen* ("*Cohen* Ruling") (Docket No. 195-1, *Long*; Docket No. 171-1, *Smith*), Exh. 1 to Third-Party Defendant GOPAC's Opposition to Defendant and Third-Party Plaintiff Fairbank Farms' Motion to Enjoin GOPAC and its Counsel From Violating the Court's Orders Limiting the Disclosure of Documents Designated "Confidential – Attorney's Eyes Only" ("Enjoin Opposition") (Docket No. 195, *Long*; Docket No. 171, *Smith*); ECF Docket, *Precourt*.

For the following reasons, I decline Fairbank's invitation:

1.  On January 20, 2011, New York Supreme Court Justice Joseph C. Teresi resolved a discovery dispute in *Cohen* by way of a letter ruling denying Fairbank's request for adoption of an AEO designation category in the confidentiality order entered in that case. *See Cohen* Ruling at 3-4. Justice Teresi stated that "to allow any documents to be designated as [AEO] is prejudicial to all of the parties in this case[.]" *Id*. at 3. He recognized that, by my ruling in the *Long* case dated September 28, 2010, I had denied GOPAC's request to modify this court's confidentiality order to permit GOPAC executive Angelo Fili to view documents designated as AEO. *See id*. at 4; *see also* Docket No. 58, *Long*. However, he stated that, while my denial of the request apparently was based on the fact that Fili could become a direct competitor of the defendants or use proprietary

3

information to their detriment, he did not find such facts in *Cohen* and, therefore, declined to follow my rationale. *See Cohen* Ruling at 4.

2. "The All Writs Statute and the relitigation exception to the Anti-Injunction Act permit a federal court to issue an injunction to *prevent* state litigation of issues or claims presented to and decided by it to protect or effectuate its judgments." *United States v. Silva*, 140 F.3d 1098, 1104 (7th Cir. 1998) (citation and internal quotation marks omitted) (emphasis added); *see also, e.g., Fernández-Vargas v. Pfizer*, 522 F.3d 55, 68 (1st Cir. 2008) ("The relitigation exception provides that where a federal court has conclusively decided an issue, it *may* prevent the unsuccessful party from relitigating that same issue in state court.") (emphasis in original).[1]

3. In this case, it is too late to prevent state court litigation. Justice Teresi issued his ruling in January. The entry of an order by this court enjoining GOPAC's counsel from disclosing to their client in other litigation (including *Cohen*) any documents designated AEO in the instant cases would impair his clear ruling. This materially distinguishes this case from the two cases on which Fairbank principally relies for the proposition that the requested injunctive relief is appropriate, *Sperry Rand Corp. v. Rothlein*, 288 F.2d 245 (2d Cir. 1961), and *ONBANCorp, Inc. v. Holtzman*, No. 96-CV-1700(RSP/DNH), 1997 WL 381779 (N.D.N.Y. June 27, 1997), *aff'd*, 125 F.3d 844 (2d Cir. 1997), *see* Fairbank Memo at 5-7; *Sperry Rand*, 288 F.2d at 247 (after plaintiff in federal court case filed state court action on January 11, 1961, defendants in federal court case filed motion in federal court for a restraining order enjoining the plaintiff from proceeding in state court, which was issued

---

[1] The All Writs Act provides, in relevant part: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Anti-Injunction Act provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Id.* § 2283.

on January 27, 1961); *ONBANCorp*, 1997 WL 381779, at *1, *3-*4 (on the same day as plaintiff, the defendant in federal court case, made clear that he was reneging on promise to stipulate in state court to same confidentiality order entered in federal court, defendant, the plaintiff in federal court case, filed motion in federal court requesting temporary restraining order and preliminary injunction barring plaintiff and anyone acting on his behalf from seeking any discovery in state action until the entry in that forum of parallel confidentiality order).[2]

4. The timing of the instant motion in relation to the issuance of Justice Teresi's order raises serious doubts about whether the requested relief fits within the parameters of the relitigation exception to the Anti-Injunction Act. Such doubts must be resolved against the issuance of the requested injunction. *See, e.g., Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1378 (9th Cir. 1997) ("Courts must construe the exceptions to the Anti-Injunction Act narrowly and resolve doubts in favor of letting the state action proceed.").

5. In any event, even assuming *arguendo* that the issuance of the relief requested by Fairbank would not run afoul of the Anti-Injunction Act, the fact "[t]hat injunctive relief may issue does not mean it must issue." *Fernández-Vargas*, 522 F.3d at 68. "The court needs a 'substantial

---

[2] Fairbank invokes two of the three exceptions to the Anti-Injunction Act: the "aid of jurisdiction" exception and the "relitigation" exception. *See* Fairbank Memo at 6 n.2. For the reasons explained by the court in *ONBANCorp*, the "aid of jurisdiction" exception is inapposite here. *See ONBANCorp*, 1997 WL 381779, at *6. Fairbank also argues, in the alternative, that the requested injunction would not run afoul of the Anti-Injunction Act because it would not "stay proceedings" in the state court. *See* Fairbank's Reply Brief in Support of Its Motion To Enjoin GOPAC and Its Counsel From Violating the Court's Orders Limiting the Disclosure of Documents Designated "Confidential – Attorney's Eyes Only" (Docket No. 198, *Long*; Docket No. 174, *Smith*) at 7-8. This point is not well-taken. As noted by the court in *ONBANCorp*: "The prohibition of Section 2283 [the Anti-Injunction Act] cannot be evaded by addressing an injunction to the parties. Moreover, an order need not stay a state court proceeding in its entirety to violate the Anti-Injunction Act." *ONBANCorp*, 1997 WL 381779, at *4. *See also, e.g., Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1201 (7th Cir. 1996) ("[A]s Justice Brandeis explained over half a century ago, 'proceeding' is a comprehensive term, covering parties to state court litigation as well as the court itself, and including all supplemental or ancillary actions taken with a view to making the suit effective.") (citation and internal punctuation omitted).

justification' for issuing such injunction. And the general prerequisites for injunctive relief must usually be met." *Id.* (citations omitted).

6.  As Fairbank suggests, *see* Fairbank Memo at 6-7, GOPAC's successful quest in state court for a confidentiality order containing no AEO designation provision effectively permits it to seek the same documents in *Cohen* that have been provided in this case, without the constraint of AEO designations. That is particularly troubling in view of my finding on February 17, 2011, that Fairbank had adduced sufficient evidence of the accessing of AEO-designated documents by GOPAC executive Angelo Fili to warrant the issuance of an order to GOPAC to show cause why it should not be held in contempt of court. *See* Docket No. 166, *Long*; Docket No. 143, *Smith*. Nonetheless, while consideration of this circumstance favors the issuance of the requested injunctive relief, consideration of other factors tips the balance the other way.

7.  Fairbank contends that GOPAC, like the state court plaintiff in *ONBANCorp*, "reversed course, refusing to stipulate to similar confidentiality orders in the companion lawsuits." Fairbank Memo at 6-7. Yet, GOPAC has never reneged in any venue on an agreement that it would permit Fairbank to designate documents AEO. While this court's confidentiality orders became binding on GOPAC once it became a party to the instant cases, *see* Confidentiality Order (Docket No. 17, *Long*; Docket No. 17, *Smith*) (together, "April Confidentiality Orders") ¶ 15 (listing, among categories of persons or entities bound by the orders, "the parties"), GOPAC never consented to their entry; those orders were issued with the consent of the plaintiffs and Fairbank before GOPAC was made a party, *see id.* at 11. GOPAC did enter into a confidentiality order with Fairbank for purposes of production of documents in response to a subpoena, but that confidentiality order permitted only GOPAC, not Fairbank, to designate documents AEO. *See* Docket No. 191-2, *Long*; Docket No. 167-

6

2, *Smith*, ¶¶ 2, 4. As Fairbank acknowledges, GOPAC has never agreed to the entry of confidentiality orders containing AEO designations in either the *Cohen* or *Precourt* cases. *See* Fairbank Memo at 2.

8. In the absence of any such agreement, GOPAC was free to contest the entry of a confidentiality order containing an AEO designation in *Cohen* or *Precourt*. Rather than seeking an injunction from this court at the outset to prevent GOPAC from taking that course, Fairbank engaged in litigation on the substance of the issue in state court. It took its chances there, and lost. Not until April 21, 2011, a full three months after the issuance of Justice Teresi's adverse ruling, did it turn to this court for aid. The difficult position in which it now finds itself, thus, is of its own making. Moreover, Fairbank's timing places this court in the difficult, if not untenable, position of issuing an order that would effectively countermand Justice Teresi's ruling in the *Cohen* case. On balance, the equities do not favor the issuance of the requested injunction.[3]

For the foregoing reasons, Fairbank's motion to enjoin GOPAC's counsel from sharing with their client documents produced in other matters that have been designated AEO in the instant cases is ***DENIED***.

---

[3] While the entry of an injunction bearing on the *Precourt* case, which is pending in a sister United States District Court, would not raise Anti-Injunction Act concerns, I decline to grant the requested injunctive relief with respect to that matter standing alone given that, (i) in that forum, as well, the parties are litigating the question of the scope of the protective order to be entered, with Fairbank having filed a partially assented-to motion for a protective order on April 18, 2011, and GOPAC having filed an objection to that motion on May 2, 2011, *see* Docket Nos. 35, 39, *Precourt*, and (ii) as a practical matter, any grant of relief with respect to *Precourt* would serve no useful purpose in view of the denial of relief with respect to *Cohen*.

## II. GOPAC Motion for Relief

GOPAC seeks several forms of relief, including an order that Fairbank has waived any AEO designation with respect to all documents so designated on October 13, 2010, and the striking or modification of AEO designation provisions in the April Confidentiality Orders, primarily on account of Fairbank's asserted violation, through the use of blanket AEO designations, of both those orders and Federal Rule of Civil Procedure 11. *See* Third-Party Defendant GOPAC's Memorandum of Law in Support of Motion for Affirmative Relief ("GOPAC Memo") (Docket No. 197, *Long*; Docket No. 173, *Smith*) at 1.

The April Confidentiality Orders provide, in relevant part, for AEO designation "only after review of the documents by an attorney . . . who has in good faith determined that the documents contain information protected from disclosure by statute or that should be protected from disclosure because it relates to highly sensitive financial, personal or marketing matters and proprietary information for which any disclosure would harm the commercial or business interests of the designating party." April Confidentiality Orders ¶ 4. The orders further provide that such "designation shall be made subject to the standards of Rule 11 and the sanctions of Rule 37 of the Federal Rules of Civil Procedure." *Id.*[4]

The April Confidentiality Orders set forth the following procedure for objection to an AEO designation: (i) service of an objection within 30 days of receipt of a document so designated, (ii) an

---

[4] The standards of Rule 11 include an implied certification, to the best of an attorney's knowledge, information, and belief formed after an inquiry reasonable in the circumstances, that a pleading, written motion, or other paper presented to the court is, *inter alia*, not being presented for any improper purpose and that the factual contentions have evidentiary support or likely will have such support after a reasonable opportunity for further investigation or discovery. *See* Fed. R. Civ. P. 11(b)(1) and (3).

obligation that counsel meet and confer within 15 days of service of such an objection, and, (iii) to the extent that agreement is not reached, the filing, within 30 days of service of the objection, of a motion by the designating party to retain AEO designation(s). *See id*. ¶ 9. The failure to file such a motion waives AEO designation(s) with respect to which objection was made. *See id*. ¶ 9(c).

GOPAC argues that (i) on October 13, 2010, as part of the so-called "Mayville Production," Fairbank made a blanket AEO designation of the roughly 25,000 documents that it produced without even reviewing them, (ii) on November 3, 2010, within 30 days of that designation, GOPAC counsel Susan Stryker objected to the blanket AEO designation, (iii) on November 19, 2010, Fairbank counsel amended the AEO designation with respect to some documents but indicated that it did not plan to review the rest, and (iv) Fairbank then failed to file any motion with respect to those disputed documents, thereby waiving AEO designation as to them. *See* GOPAC Memo at 4-6.

Fairbank counters that (i) in view of the sheer volume of the Mayville Production, it proposed a good-faith method of AEO designation to which GOPAC never objected until now, and (ii) Stryker's November 3, 2010, email was part and parcel of that agreed-upon process rather than an "objection" for purposes of the April Confidentiality Orders. *See* Fairbank's Response to GOPAC's Motion for Affirmative Relief (Docket No. 199, *Long*; Docket No. 175, *Smith*) at 3-6.

Careful review of the parties' submissions persuades me that Fairbank's characterization of events is the more accurate one and that there was no violation of the April Confidentiality Orders or of Rule 11. In view of the volume of the Mayville Production and Fairbank's professed inability to "review each document" in advance of that production, Fairbank proposed to GOPAC that it designate all documents AEO for purposes of the production and then review and affix appropriate designations to those documents that GOPAC chose to copy. *See* Docket No. 193-4, *Long*; Docket

9

No. 169-4, *Smith*. Even so, Fairbank did not utterly fail to review the Mayville Production documents in advance of making them available to GOPAC. Fairbank counsel Shawn Stevens submits a sworn affidavit stating that, although he was not able to review every single page, he did review the Mayville Production documents prior to making them available to GOPAC, and his review revealed that the vast majority of the requested records contained proprietary and sensitive information requiring AEO protection. *See* Docket No. 199-1, *Long*; Docket No. 174-1, *Smith*, ¶ 4.

GOPAC chose to copy every single document produced in Mayville. *See id.* ¶ 6. Rather than "objecting" to Fairbank's AEO designations by her email dated November 3, 2010, Stryker inquired, consistent with Fairbank's proposal for the handling of such designations, whether the AEO designations could now be withdrawn. *See* Docket No. 193-5, *Long*; Docket No. 169-5, *Smith*. A series of email communications ensued regarding GOPAC's specific requests for the redesignation of various categories of documents. *See id.*

By email dated November 19, 2010, to Stryker, Fairbank counsel Christopher Dombrowicki stated: "Due to the volume of documents GOPAC requested, it is impossible to further amend the designations without performing a page by page analysis of the documents produced. Instead, I invite you to present any additional requests you may have concerning Fairbank's designations and I will work diligently to address them." *Id.* Seemingly accepting this offer, Stryker emailed Dombrowicki on November 22, 2010, with further document redesignation proposals. *See id.* She interposed no objection to his suggested manner of proceeding. *See id.* There is no indication that, at this juncture, GOPAC ever "objected" to Fairbank's refusal to redesignate specific AEO documents or categories of documents or otherwise ever "objected" to its continuing blanket AEO designation of the balance of the documents. *See id.*

Given the parties' agreement on the handling of AEO designations with respect to the Mayville Production and Fairbank's counsel's good-faith attempts to review those documents as thoroughly as possible in the circumstances, Fairbank committed no violation of the April Confidentiality Orders or Rule 11 in connection therewith. Further, in view of GOPAC's failure to object in any cognizable fashion to such AEO designations, Fairbank did not effectuate a waiver of those designations by never filing a motion with respect to them. GOPAC's requested declaration that Fairbank has waived AEO protection with respect to the Mayville Production and requested injunction against its further violation of the April Confidentiality Orders and Rule 11 accordingly are unwarranted.[5]

To the extent that GOPAC seeks modification of the April Confidentiality Orders and/or further relief on the bases not only that Fairbank violated those orders by use of blanket AEO designations but also that (i) GOPAC was not a party to and arguably was not bound by those orders, (ii) Justice Teresi, correctly in GOPAC's view, declined Fairbank's request for an AEO designation category on the basis that GOPAC and Fairbank are not competitors, (iii) protective orders containing AEO designations are extreme and disfavored, and good cause for them must be shown, and (iv) continuing use of the AEO designation unfairly hinders GOPAC's ability to prepare its defenses in these cases, *see* GOPAC Memo at 2-10, I decline its request for relief.

---

[5] The case of *Paradigm Alliance, Inc. v. Celeritas Techs., LLC*, 248 F.R.D. 598 (D. Kan. 2008), which GOPAC cites for the proposition that Fairbank's blanket AEO designations violated the April Confidentiality Orders and Rule 11, *see* GOPAC Memo at 6, is materially distinguishable. There is no indication in *Paradigm* that counsel worked out a procedure by which to make AEO designations in view of that particular voluminous production. *See Paradigm*, 248 F.R.D. at 603-05. In addition, while Stevens reviewed the Mayville Production documents in advance of the production sufficiently to have a sense that the majority merited AEO designation in his view, the designator in *Paradigm* appeared to have made no review whatsoever, having designated as AEO such innocuous documents as blank pieces of paper and directions to its office. *See id*. at 605.

While it is true that GOPAC, which was not yet a party to *Long* or *Smith* at the time of adoption of the April Confidentiality Orders, did not consent to the entry of those orders, it was bound by them as soon as it became a party, *see* April Confidentiality Orders ¶ 15 (listing, among categories of persons or entities bound by the orders, "the parties"). Indeed, GOPAC's conduct up to now suggests that it so understood; for example, in September 2010, it moved to modify those orders to permit GOPAC executive Angelo Fili to view AEO-designated documents. *See* Docket No. 58, *Long*. GOPAC makes no more persuasive a showing now than it did in September 2010 for modification of the April Confidentiality Orders. Indeed, the force of its request is undercut by the sheer passage of time and the lateness of the stage of this litigation, discovery having closed on December 20, 2010, *see* Docket No. 82, *Long*; Docket No. 67, *Smith*, and dispositive and *Daubert* motions having been filed on January 10, 2011, *see* Docket Nos. 112-13, 116, *Long*; Docket Nos. 90-91, 94, *Smith*, months before the filing of the instant motion.

For all of the foregoing reasons, GOPAC's motion for affirmative relief is **_DENIED_**.

**_SO ORDERED_**.

### _NOTICE_

***In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.***

***Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to appeal the district court's order.***

Dated this 31st day of May, 2011.

                                          /s/ John H. Rich III
                                          John H. Rich III
                                          United States Magistrate Judge