## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| MARGARET LONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket no. 1:09-cv-592-GZS |
| | ) | |
| FAIRBANK FARMS | ) | |
| RECONSTRUCTION CORP., | ) | |
| | ) | |
| Defendant & Third-Party | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREATER OMAHA PACKING | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## ORDER ON CHOICE OF LAW & COMPARATIVE NEGLIGENCE

Before the Court is Third-Party Defendant Greater Omaha Packing Company's ("GOPAC") Motion for Partial Judgment on the Pleadings (Docket # 304) and Third-Party Plaintiff Fairbank Farm Reconstruction Corp.'s ("Fairbank") Motion in Limine to Exclude Evidence of Comparative Negligence (Docket # 314).

By Order dated October 11, 2011 (Docket # 324), the Court DENIED in part the Motion for Partial Judgment but agreed to reserve ruling on the choice of law issue raised by the Motion. To the extent GOPAC's Motion sought a definitive ruling that Nebraska law would apply, the Court hereby DENIES the remaining portion of the Motion for Partial Judgment and finds that New York law applies to the remaining dispute between the parties. Under this choice of law

analysis and for reasons explained herein, the Court hereby GRANTS IN PART Fairbank's

Motion in Limine to Exclude Evidence of Comparative Negligence (Docket # 314).

## I.   CHOICE OF LAW

### A.  Legal Standard

As this Court has ruled, "[a] federal court sitting in diversity must apply the conflict of

law rules of the state in which it sits, in this case, Maine." Walker v. Unum Life Ins. Co. of Am.,

530 F. Supp. 2d 351, 353 (D. Me. 2008).  "The state of Maine follows the Restatement (Second)

of Conflicts of Laws and the 'most significant contacts and relationships' approach in

determining choice of law." Id. (citations omitted).  Under this standard, "[t]he state that has the

more significant contacts and the more substantial relationships to the occurrence and the parties

should enjoy the application of its laws." Adams v. Rubin, 964 F. Supp. 507, 509 (D. Me. 1997);

see also Auto Europe, LLC v. Connecticut Indem. Co., 321 F.3d 60, 65 (1st Cir. 2003).  The

Restatement directs that in determining which state has the most significant contacts, courts

should consider: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the

place of performance, (d) the location of the subject matter of the contract, and (e) the places of

incorporation and business of the parties.  See Memorandum Decision on Motion to Exclude and

Recommended Decision on Motions for Summary Judgment ("Recommended Decision")

(Docket # 209), No. 1:09-cv-592, 2011 WL 2516378, at *20 (D. Me. May 31, 2011) (citing

Restatement (Second) of Conflict of Laws § 188(2)), aff'd, Order Affirming the Recommended

Decision of the Magistrate Judge, No. 1:09-cv-592 (D. Me. July 7, 2011) (Docket # 228); see

also State Farm Mut. Auto. Ins. Co. v. Koshy, 995 A.2d 651, 666-67 (Me. 2010) (applying

Section 188 of the Restatement).

### B.  Discussion

As to the first factor, "the place of contracting is the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect." Restatement (Second) of Conflict of Laws § 188, cmt. e.  This factor favors Nebraska, where GOPAC signed the Fairbank Guarantee.  In the overall analysis, however, "the place of contracting is a relatively insignificant contact."  Id.  The second factor favors both Pennsylvania and Nebraska, as the contract was negotiated between Fairbank's affiliate in Pennsylvania and GOPAC in Nebraska.  See Recommended Decision, 2011 WL 2516378, at *20.  However, "[t]his contact is of less importance when there is no one single place of negotiation and agreement, as, for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone," as is the case here.  See Restatement (Second) of Conflict of Laws § 188, cmt. e.  Accordingly, the Court gives the first and second factors only limited weight.

The third factor—place of performance—favors New York, as New York is the state where GOPAC performed on its contract by delivering the product subject to the contract.  See In re Masonite Corp. Hardboard Siding Prods. Liab. Lit., 21 F. Supp. 2d 593, 598 (E.D. La. 1998) (ruling that "[t]he place of delivery, which is the place of performance, should be given the highest priority" in the § 188 choice of law analysis.); see also Powers v. Lycoming Engines, 272 F.R.D. 414, 422 (E.D. Pa. 2011) (ruling that "performance occurred in the state where each buyer took delivery of the plane or engine and paid for it").  Under the parties' agreement, including the Fairbank Guarantee, GOPAC was responsible for shipping the product to Fairbank's plant in New York, and GOPAC maintained control over the product during the shipping process.  GOPAC performed its obligations if and when it delivered a product that met

the Raw Material Specifications (which included being free from *E. coli* O157:H7) to Fairbank's plant in New York.  Thus, for the purpose of this choice of law analysis, GOPAC's place of performance is New York.

The fourth factor also favors New York, for New York was the location of the subject matter of the contract on the day the subject matter was delivered.  See Powers, 272 F.R.D. at 423 (ruling that where the subject matter of the contract is mobile—and not a stationary object such as land or a building—"the location of the subject matter of the contract has been determined to be the location of the subject matter on the day of delivery"); Price v. Int'l Tel. & Tel. Corp., 651 F. Supp. 706, 711 (S.D. Miss. 1986) (concluding under a Section 188 choice of law analysis that the "location of the subject matter of the contract on the day of delivery" was significant in determining which state law applied).

While it is relevant that the subject matter of the contract was manufactured by GOPAC in Nebraska, the place of manufacture is not decisive in this analysis.  See In re Masonite Corp. Hardboard Siding Prods. Liab. Lit., 21 F. Supp. 2d at 598 ("The Court is not persuaded that the place of manufacture should be decisive in this analysis.  Assuming all the [product] was manufactured in Mississippi, it is equally pertinent that all of the product at issue was shipped to a single state—Florida.").  The subject matter of the contract was raw beef.  Because raw beef is a highly mobile product it is more important where the product was delivered than where it was manufactured.  See Powers, 272 F.R.D. at 423.  Indeed, the alleged breach of warranty in this case could only have occurred once Fairbank took possession of the product at its plant in New York.  Likewise, to the extent that GOPAC alleges comparative negligence on the part of Fairbank.  Fairbank's alleged negligence would have occurred at the New York plant.  Under these circumstances, New York has a particularly strong interest in supplying the applicable rules

of decision.   These interests include protecting New York meat processing plants from contaminated meat supplied by out-of-state slaughterhouses and setting the standard of care to be used at processing plants operating within New York.

The fifth factor carries no weight in the Court's choice of law analysis.   GOPAC and Fairbank are incorporated with their principal places of business in Nebraska and New York, respectively.

The Court notes that the principles governing choice-of-law, which are laid out in Section 6 of the Restatement also support application of New York law.   See, e.g., Koshy, 995 A.2d at 666-67 (discussing the role of Section 6 of the Restatement in conducting a choice of law analysis under Section 188 of the Restatement).   The Law Court has specifically noted that the protection of the justified expectations of the parties is a significant principle in the contract context.   See id.   In the absence of an effective choice of law by the parties, the parties have a justified expectation that New York law could be used to construe an agreement that was to be performed by both parties in New York.

In summary, an analysis of the five factors set forth in Restatement (Second) of Conflict of Laws § 188 and the relevant principles set forth in Restatement (Second) of Conflict of Laws § 6, as adopted in Maine, indicates that New York law should apply to the extent that any particular state law must supply rules for construing the terms of the parties' agreement and the alleged breach thereof.

## II.   COMPARATIVE NEGLIGENCE

Fairbank has elected to proceed to trial on only one claim:   Indemnification and hold harmless agreement between the parties.   (See Final Pretrial Order (Docket # 248) at 3.)   On summary judgment, this Court held that "the Fairbank Guarantee constituted the parties'

effective agreement with respect to the subject matter of contractual indemnification." Recommended Decision at 41.[1]  Thus, this case proceeds to trial on the Fairbank's claim that GOPAC breached the Fairbank Guarantee and what damages Fairbank may recover if it proves by a preponderance of the evidence that there was a breach of the Fairbank Guarantee by GOPAC.

In its Motion in Limine to Exclude Evidence of Comparative Negligence (Docket # 314), Fairbank asks the Court for a pretrial ruling excluding GOPAC from presenting any evidence or argument regarding Fairbank's alleged comparative negligence, including evidence of the conditions at Fairbank's New York plant.  In Fairbank's view, Fairbank's alleged negligence is irrelevant to its recovery of damages under the language of the Guarantee and applicable portions of the U.C.C.  In stark contrast, GOPAC maintains that Fairbank is not entitled to indemnity under the Fairbank Guarantee if GOPAC—relying on common law and/or the U.C.C.—can prove that Fairbank's negligence was the proximate cause of the injury sustained by the two original consumer plaintiffs.

At its core, this fundamental remaining disagreement between the parties raises legal questions about the construction of their indemnity agreement and the calculation of damages under that agreement.  These issues were previously discussed, but not resolved, in the Recommended Decision, which was subsequently adopted by this Court.  (See Recommended Decision at 41-48.)  In the Court's view, the pending motion in limine requires the Court to now resolve those legal questions in order to provide a framework for considering what relevant evidence may be admitted at trial.

---

[1] Although GOPAC did object to this portion of the Recommended Decision, this Court considered and rejected those objections upon its *de novo* review.  (See Order Affirming Recommended Decision (Docket # 228).)  Nothing presented in the record to date provides a basis for the Court to reconsider its prior conclusion that the Fairbank Guarantee controls.

**A.  Impact of New York Law**

The Court's analysis necessarily begins by viewing the Fairbank Guarantee through the lense of New York common law.  Under New York law, "an indemnity contract is interpreted to effectuate the intention of the parties as expressed in the unequivocal language of the contract." Gibbs-Alfano v. Burton, 281 F.3d 12, 19 (2d Cir. 2002) (citing Weissman v. Sinorm Deli, Inc., 669 N.E.2d 242 (1996); see also Sherry v. Wal-Mart Stores East L.P., 889 N.Y.S.2d 251, 255 (2d Dept. 2009) (noting that the "language and purposes of the entire agreement and the surrounding facts and circumstances" can serve as a basis for implying the intention to indemnify for the negligence of the indemnitee).  While indemnity provisions must be strictly construed, they "need not explicitly state an intent that the undertaking extend to the indemnitee's own negligent acts."  New York Telephone Co. v. Gulf Oil Corp., 609 N.Y.S.2d 244, 246 (1st Dept. 1994). "[W]here there is all-encompassing language in an indemnification agreement, the New York Court of Appeals has divined the 'unmistakable intent of the parties' to indemnify against the indemnitee's negligent acts."  Gibbs-Alfano, 281 F.3d at 19 (citing Levine v. Shell Oil Co., 269 N.E.2d 799 (1971)).

The Fairbank Guarantee states:

> The Seller agrees to indemnify and hold harmless [Fairbank], and its affiliates, their Officers, Directors, employees and agents (hereinafter referred to as "Buyer") harmless from all claims, damages, causes of actions, suits, proceedings, judgments, charges, losses, costs, liabilities, and expenses (including attorneys' fees) arising from any products (raw materials) as delivered to Buyer by Seller, that do not comply with the provision of the Buyers' Raw Material Specifications or that are causes by the negligence or intentional misconducts of Seller, its Agents and employees.

(Fairbank Guarantee (Docket # 280-2) at Page ID 7008.)   The express Raw Material Specifications warranty then includes very detailed testing and sampling requirements while allowing for quality control testing by Fairbank.

These provisions unambiguously and broadly call for GOPAC to indemnify Fairbank for losses that arise from either GOPAC's negligence, GOPAC's intentional misconduct or from any GOPAC product delivered to Fairbank that did not comply with the Raw Material Specifications.[2]  Given the disjunctive nature of the Guarantee, indemnification for breach of the express warranty necessarily extends to situations beyond which GOPAC engaged in intentional or negligent misconduct.  In short, this indemnity necessarily includes any losses arising from the delivery of beef that does not conform with the express warranty—regardless of any subsequent negligence on the part of Fairbank.[3]  This legal conclusion means that under the terms of the Fairbank Guarantee, as construed under New York law, GOPAC may not avoid or limit its indemnification by proving that Fairbank's negligence contributed to the personal injuries that were the subject of the Long and Smith settlements.

Additionally, the Court concludes that New York law allows Fairbank to seek consequential damages for a breach of the Fairbank Guarantee.   Under New York law, consequential damages are recoverable on a breach of contract claim "upon a showing that [the consequential damages] were foreseeable and within the contemplation of the parties at the time the contract was made."  See, e.g., American List Corp. v. U.S. News & World Report, Inc., 549

---

[2]  The Raw Material Specifications are more readily viewed as an express warranty that the beef delivered would be of a certain quality and free of specified adulterants, including *E.coli* O157:H7.

[3]  This conclusion is necessarily limited by New York law voiding indemnity agreements that "purport to grant exemption for liability for willful or grossly negligent acts."  Gross v. Sweet, 400 N.E.2d 306, 308 (N.Y. 1979) (holding that "contracts intended to exculpate a party from the consequences of his own negligence," though frowned upon and subject to close judicial scrutiny, "are enforceable" provided that the contracts do not indemnify for intentional misconduct or gross negligence).

N.E.2d 1161, 1164 (N.Y. 1989).  The settlements paid to Long and Smith for personal injuries suffered as a result of *E. coli* contamination fall squarely within the realm of foreseeable damages contemplated by GOPAC and Fairbank under the Fairbank Guarantee.  See, e.g., Bi-Economy Market, Inc. v. Harleysville Ins. Co., 886 N.E.2d 127, 130 (N.Y. 2008) (noting that whether consequential damages were reasonably contemplated by the parties' agreement requires the court to consider "the nature, purpose and particular circumstances of the contract" and determine whether the claimed "loss from a breach is foreseeable and probable") (internal quotations omitted).[4]  Thus, under New York contract law, Fairbank may seek consequential damages so long as it can prove that those damages were proximately caused by GOPAC's breach.  See id. at 131 (citing Williston on Contracts).

### B.  Impact of UCC

Next, the Court must consider the role of the UCC, as it has been adopted by New York. There is no dispute that the relationship between the parties involved a sale of goods and, thus, falls within Article 2 of the UCC.  In ruling on the summary judgment motions, the Recommended Decision, subsequently adopted by this Court, specifically left open the legal question of whether UCC Section 2-715 would displace any applicable common law principles.[5] (See Recommended Decision at 46 n. 60.)  Under New York law, "the UCC displaces the common law when the particular section at issue produces a result that would be contrary to that

---

[4] The Court acknowledges that many New York courts interpret the Bi-Economy decision as still requiring "bad faith" as a "necessary component of successful recovery of consequential damages," particularly in the insurance contract context.  Goldmark, Inc. v. Catlin Syndacite Ltd., No. 09-cv-3876, 2011 WL 743568 at *3 & n.1 (E.D.N.Y. Feb. 24, 2011) (emphasizing the need to tie consequential damages to an insurer's breach of the covenant of good faith and fair dealing).  The Court does not believe that any lingering "bad faith" requirement has any application in the context of the express warranty at issue in this case.  Even if that were the case, the UCC would arguably displace New York law on that point.

[5] To the extent Fairbank maintains the summary judgment provided a definitive ruling on this issue, Fairbank misreads the text of the decision and accords undue weight to a decision that ultimately denied summary judgment to both sides.  Cf. Fed. R. Civ. P. 56(g) (providing mechanism for Court to grant summary judgment on discrete issues).

obtained under ordinary contract law." <u>McNally Wellman Co. v. New York State Electric & Gas Corp.</u>, 63 F.3d 1188, 1196 (2d Cir. 1995) (citations omitted) (finding that UCC § 2-719 displaced New York common law).

At the summary judgment stage, the Court provided ample analysis of how UCC Section 2-715 might apply to an award of consequential damages under the Fairbank Guarantee.  (<u>See</u> Recommended Decision at 43-47.)  The Court need not repeat that analysis here.  Suffice it to say that the language of Section 2-715 generally accords with New York common law by allowing an award of consequential damages as long as the damage is proximately caused by the breach.  In this context, where the "injury involved follows the use of goods without discovery of the defect causing the damage," Comment 5 to Section 2-715 specifically explains that consequential damages would be limited if and only if the evidence established that it was unreasonable for Fairbank to have used the beef without an inspection that would have revealed the defects.[6]  <u>See</u> N.Y. U.C.C. § 2-715(2)(b) cmt. 5.  Neither side suggests that this explanation of the proximate cause requirement is somehow unique to the UCC.

In any event, Fairbank's Motion effectively concedes that Section 2-715 provides the rules by which it must establish the necessary proximate causation to recover consequential damages under the Fairbank Guarantee.[7]  Given this concession, the proper course is to look to Section 2-715 for the law regarding proximate causation on the consequential damages sought by

---

[6] There has never been any allegation or evidence suggesting that Fairbank in fact discovered the *E. coli* prior to using the raw beef in question.  Thus, this alternative mechanism for breaking the chain of proximate causation is not relevant here.

[7] At the tail end of its Motion, Fairbank includes a short albeit confusing argument that the proximate cause question under Section 2-715(2)(b) is somehow  resolved by GOPAC stipulating to the reasonableness of the Long and Smith settlements.  (<u>See</u> Fairbank Mot. at 9-10.)  This argument is simply without merit.  In the Court's view, the issue of proximate causation remains to be resolved by the jury at trial.

Fairbank.[8]  Nonetheless, the Court believes that New York common law would command a similar analysis and, thus, there is no need to declare that Section 2-715 displaces New York common law on this point.

This analysis brings us back to the original question posed by Fairbank's Motion in Limine:  May GOPAC present evidence and argument regarding the comparative negligence of Fairbank?  The answer to this question is clearly no.  However, GOPAC may present evidence related to proximate causation.  Such evidence likely will include evidence suggesting it was unreasonable for Fairbank to use the raw beef supplied by GOPAC without some further inspection that would have revealed the defect, in this case, *E. coli* contamination.  See, e.g., Scott Brass, Inc. v. C & C Metal Products Corp., 473 F. Supp. 1124, 1131 (D.R.I. 1979) (noting that alleged defect was apparent upon visual inspection and that the trial record was devoid of evidence as to whether "a reasonably prudent" buyer would have used and processed the apparently defective materials).  In its motion papers, Fairbank presents compelling evidence suggesting that they acted as reasonably prudent buyers and reasonably relied on the seller's testing given the course of dealing and practices within the industry.  (See Fairbank Mot. (Docket # 314) at 6-9.)  However, Fairbank's compelling proffer does not mean that this issue is actually undisputed.   Ultimately, the jury will decide what evidence it finds compelling and whether the preponderance of the evidence establishes the requisite proximate cause.

In light of the legal rulings contained in this Order, at trial, the Court anticipates that relevant evidence will include: (1) evidence related to the issue of proximate causation and (2) evidence regarding the source of the *E. coli* ultimately found in Fairbank's September 15, 2009 ground beef.  To the extent Fairbank's Motion sought pre-trial exclusion of any evidence of

---

[8] It appears that both sides have now abandoned the argument that the Fairbank Guarantee could actually be read to contain an agreement to vary the default UCC rules regarding consequential damages.  See N.Y. U.C.C. § 1-102(3).

conditions at Fairbank's plant, the Court believes that at least a portion of that evidence may be relevant to either the "proximate cause" or "source" issue.  Nonetheless, Fairbank is free to renew its objections at trial if it believes any evidence is excludable under Rule 402 or 403.

## III.    CONCLUSION

For the reasons just explained, the remaining portion of GOPAC Motion for Partial Judgment on the Pleadings (Docket # 304) is DENIED and Fairbank's Motion in Limine to Exclude Evidence of Comparative Negligence (Docket # 314) is GRANTED IN PART and DENIED IN PART.

While the Court will proceed to issue separate orders on the remaining motions in limine, those orders will inevitably be guided by the legal conclusions laid out in this Order.  The Court expects that the parties will begin to prepare their presentation in evidence with these legal rulings in mind.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 25th day of October, 2011.