UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MARGARET LONG,                              )
                                            )
        Plaintiff,                        )
                                            )
v.                                          )   Docket no. 1:09-cv-592-GZS
                                            )
FAIRBANK FARMS                              )
RECONSTRUCTION CORP.,                       )
                                            )
        Defendant & Third-Party           )
        Plaintiff,                        )
                                            )
v.                                          )
                                            )
GREATER OMAHA PACKING                       )
COMPANY, INC.,                              )
                                            )
        Third-Party Defendant.            )

**ORDER ON RENEWED APPLICATION FOR ATTORNEYS' FEES & COSTS**

      Before the Court is the Renewed Application for Attorneys' Fees & Costs (ECF No. 433) by Fairbank Farms Reconstruction Corp. ("Fairbank"). Following the filing of this application, Fairbank filed a Fee Petition Stipulation (ECF No. 434) reducing its fee and cost request to $2,434,788.44, plus prejudgment interest in the amount of $429,413.48. Greater Omaha Packing, Inc. ("GOPAC") then filed its response (ECF No. 435). Fairbank completed the briefing on this application with its filing of a reply (ECF No. 436). Having considered all of the parties' written submissions, the Court now GRANTS Fairbank's Renewed Application for reasons stated herein.

## I. BACKGROUND

Fairbank's request for attorneys' fees and costs is based on the contract between Fairbank and GOPAC. In relevant part, that contract, referred to throughout this litigation as the "Fairbank Guarantee," calls on GOPAC to

> ... indemnify and hold harmless American Foodservice Corporation and American Fresh Foods, and its[ ] affiliates [Fairbank], their Officers, Directors, employees and agents (herein referred to as "Buyer") harmless from all claims, damages, causes of actions, suits, proceedings, judgments, charges, losses, costs, liabilities and expenses (including attorneys' fees) arising from any products (raw materials) as delivered to Buyer by [GOPAC], that do not comply with the provisions of the Buyer's Raw Material Specifications or that are caused by the negligence or intentional misconduct of [GOPAC], its [ ] Agents and employees.

Long v. Fairbank Farms, Inc., 1:09-CV-592-GZS, 2011 WL 2516378 at *13 (D. Me. May 31, 2011) amended, 1:09-CV-592-GZS, 2011 WL 2490950 (D. Me. June 22, 2011); see also Trial Ex. 2. The Court has already determined as a matter of law that the Fairbank Guarantee governed the relationship between GOPAC and Fairbank during the time period at issue in this lawsuit. See Long v. Fairbank Farms, Inc., 2011 WL 2516378 at *17-*19, report and recommendation affirmed, 2011 WL 2669199 (D. Me. July 7, 2011). Likewise, the Court has determined that New York law governs the construction of the Fairbank Guarantee. See Long v. Fairbank Reconstruction Corp., 824 F. Supp. 2d 197, 201 (D. Me. 2011). As a result of the jury verdict and final judgment subsequently entered, it has also been determined that GOPAC breached the Fairbank Guarantee by delivering adulterated beef to Fairbank in September 2009. See, e.g., Jones v. Fairbank Reconstruction Corp., No. 2:11-cv-437-GZS, 2013 WL 6019294 at *9 & n.16 (D. Me. Nov. 13, 2013) (holding that the Jones/Smith verdict precludes GOPAC from rearguing the applicability of the Fairbank Guarantee). As a result of that delivery, the jury determined that Fairbank was later required to pay settlements to both Long and Smith for injuries each sustained as a result of consuming this adulterated beef.

The sole issue that remains for resolution is what "expenses (including attorneys' fees)" GOPAC is contractually obligated to pay Fairbank as a result of the final judgment entered in this case, which notably was the first of the 2009 Northeast Outbreak cases to proceed to trial. The parties agreed that the issue of what fees and expenses were due pursuant to this provision would be resolved by the Court without a jury. (See Trial Transcript (ECF No. 374) at 1291.)

## II. DISCUSSION

In general, "a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law" and "where a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception." McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1313 (2d Cir. 1993). In this case, GOPAC seeks to avoid this rule by invoking a novel exception based on the implied covenant of good faith and fair dealing. GOPAC also alternatively presses some specific objections to Fairbank's fee request. The Court considers each of these objections but ultimately finds them lacking as explained below.

### A. The Covenant of Good Faith & Fair Dealing

GOPAC devotes most of its opposition to arguing that Fairbank's fee application should be entirely rejected based on conduct that GOPAC claims was a violation of the implied covenant of good faith and fair dealing. (GOPAC Response (ECF No. 435) at 2-9.) In support of this claim, GOPAC points to various discovery violations and asserts that Fairbank withheld essential data prior to trial in this case. In GOPAC's view, this conduct was so egregious that it can justify the denial of attorneys' fees that would otherwise be awarded under a contractual fee-shifting provision.

In accordance with the Court's prior choice-of-law rulings, the Court looks to New York law for guidance in assessing GOPAC's arguments regarding the impact of a breach of the implied covenant of good faith and fair dealing. As even the First Circuit has recognized, "New York law recognizes the existence of an implicit covenant of good faith and fair dealing," which "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Ophthalmic Surgeons, Ltd. v. Paychex, Inc., 632 F.3d 31, 40 (1st Cir. 2011) (citing & quoting Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 98 (2d Cir. 2007) & Dalton v. Educ. Testing Serv., 663 N.E.2d 289, 291 (N.Y. 1995)). Thus, a party who is alleged to have breached a contract may raise a claim for breach of the covenant of good faith and fair dealing as a defense. See, e.g., Scientific Components Corp. v. Sirenza Microdevices, Inc., 03 CV 1851 NGG RML, 2006 WL 6937123 at n.23 (E.D.N.Y. July 11, 2006) report and recommendation adopted, 03-CV-1851(NGG)(RML), 2006 WL 2524187 (E.D.N.Y. Aug. 30, 2006). However, GOPAC has raised this defense only to the post-trial claim for attorneys' fees. Thus, even assuming GOPAC breached its agreement with Fairbank in September 2009 by supplying product contaminated with *e.coli* O157:H7 (as the jury concluded it did), GOPAC now claims that Fairbank's later breach of the implied covenant between approximately October 2010 through May 2013 provides a basis for limiting the amount Fairbank can collect in indemnification.

In support of this rather novel argument, GOPAC provided the Court with four case citations. (See GOPAC Response (ECF No. 435) at 2.) Most of the cited cases are quite simply irrelevant to the motion now before this Court and contain no mention of attorneys' fees. See generally, Scientific Components Corp., 2006 WL 6937123, report and recommendation

adopted, 2006 WL 2524187; Quail Ridge Assoc. v. Chemical Bank, 558 N.Y.S.2d 655 (3d Dep't 1990); Super Glue Corp. v. Avis Rent A Car Sys., Inc., 517 N.Y.S.2d 764 (2d Dep't 1987). At best, these three cases support the basic proposition that "a party may assert breach of the covenant as a defense to a contract claim, much like the doctrine of unconscionability, but may not assert a breach of the covenant as an independent basis for imposing liability on another." Scientific Components Corp., 2006 WL 6937123 at n.23 (citing and quoting Quail Ridge Assoc., 558 N.Y.S.2d at 657; Super Glue Corp., 517 N.Y.S.2d at 766).

GOPAC's other citation, T.P.K. Const. Corp. v. Southern Am. Ins. Co., 752 F. Supp. 105 (S.D.N.Y. 1990), comes slightly closer to the mark. The contract at issue in T.P.K. was a general indemnity agreement that explicitly included "counsel fees." Id. at 107. However, in the context of a summary judgment motion, the T.P.K. court acknowledged only that a breach of the implied covenant of good faith and fair dealing by the surety during the performance of the agreement, if established, might prevent the surety from enforcing the indemnification agreement generally. See id. at 112-113 (ordering the parties to further brief whether the surety's conduct met the requisite standard for breach of the implied covenant under New York law).

In short, GOPAC's cited cases do not support the exclusion of a specific category of damages (attorneys' fees) based on discovery violations during the litigation seeking to enforce the indemnification provisions. In the Court's view, New York law on the covenant of good faith and fair dealing would not support such an exclusion that would nullify the express terms of the parties' agreement. See, e.g., Fesseha v. TD Waterhouse Investor Servs., 761 N.Y.S.2d 22, 23 (1st Dep't 2003) ("While the covenant of good faith and fair dealing is implicit in every contract, it cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights."). Therefore, the Court finds no merit in

GOPAC's argument that the pending motion may be entirely denied based on a finding that Fairbank's conduct during discovery amounts to a breach of the implied covenant of good faith and fair dealing.[1]

### B. Calculation of the Attorneys' Fee Award

Having concluded that GOPAC cannot entirely avoid the contractual fee-shifting provision of the Fairbank Guarantee, the Court next considers the amount to be awarded pursuant to the fee-shifting provision. The Court notes at the outset that the contractual provision shifting of attorneys' fees in this case does not explicitly subject such fees to any reasonableness cap. Nonetheless, under New York law, contractual fee-shifting provisions are generally read to allow recovery of "only . . . those 'expenses, costs and attorney's fees' that a reasonable client in like circumstances would have expended absent an indemnification provision." Union Cent. Life Ins. Co. v. Berger, 10 CIV. 8408 PGG, 2013 WL 6571079 (S.D.N.Y. Dec. 13, 2013) (citing In Time Products, Ltd. v. Toy Biz, Inc., 38 F.3d 660, 667-68 (2d Cir. 1994) & Chinatrust Bank (U.S.A.) v. Pinter, No. 04CV5331 (SLT)(KAM), 2008 WL 2987152, at *2 (E.D.N.Y. July 31, 2008)). Thus, under New York law, "a party is not entitled to reimbursement for fees that it would not have agreed to pay if there had been no contractual provision for reimbursement." In Time Products, 38 F.3d at 668.

Therefore, the Court begins its consideration of Fairbank's fee request by considering the appropriate lodestar. See Cent. Pension Fund of the Int'l Union of Operating Engineers & Participating Employers v. Ray Haluch Gravel Co., -- F. 3d ---, 11-1944, 2014 WL 930829 at *2 (1st Cir. Mar. 11, 2014) ("The calculation of shifted attorneys' fees generally requires courts to follow the familiar lodestar approach."); F.H. Krear & Co. v. Nineteen Named Trustees, 810

---

[1] Having concluded that this argument fails as a matter of law, the Court declines to consider whether the record contains adequate factual support for a conclusion that Fairbank's conduct during the litigation amounts to a breach of the implied covenant of good faith and fair dealing.

F.2d 1250, 1263 (2d Cir. 1987) (applying the "'lodestar' method, in which the hours reasonably spent by counsel, as determined by the Court, [are] multiplied by the reasonable hourly rate" to a contractual fee-shifting case). With respect to the reasonable hourly rate, the Court notes that GOPAC has made no objection to the hourly rates charged by Fairbank's attorneys for their work in this case. The record also establishes that Fairbank's primary attorneys charged reduced rates for their work on this matter. See, e.g., Stevens Aff. (ECF No. 433-2) ¶13 (indicating he charged a reduced rate of $300 although his standard hourly rate is $450); Webber Aff. (ECF No. 433-29) ¶14 (indicating he charged $350 per hour in this matter but has a typical billing rate of $395 per hour). Additionally, local counsel charged rates that match the prevailing rates charged in Maine for similar work.[2] See Ex. 14 to Stevens Aff. (consisting of monthly bills received from Thompson & Bowie, LLP) & Catsos Aff. (ECF No. 433-30) ¶3. Thus, the Court readily finds that the requested fee amounts reflect reasonable hourly rates.

With respect to the time productively expended on this litigation, the record contains over 700 pages of monthly invoices (Page ID# 12348-Page ID# 13066) detailing the time billed at the respective hourly rates of various counsel and paralegals. Having reviewed these records and given the Court's familiarity with this hard-fought litigation, the Court concludes that the record supports a lodestar calculation of: $1,831,832.32 for work completed by Gass Weber Mullins LLC.[3] Additionally, the Court concludes that the local counsel appropriately billed fees and costs totaling $165,162.70. As a result, the presumptively reasonable fee is $1,996,995.02. Additionally, the records submitted support additional related costs totaling $437,793.42.

---

[2] The undisputed record supports a similar finding with respect to the work done by locally retained counsel in Nebraska and Washington. See Downer Aff. (ECF No. 433-31) & Slovek Aff. (ECF No. 433-32).

[3] The Court has arrived at this figure by deducting the $73,330.18 listed in the June 20, 2013 Fee Petition Stipulation from the total requested fee ($1,905,162.50).

7

Given the total settlement payouts in this case were $400,000, it may initially appear unreasonable for Fairbank to have paid such a significantly larger sum to defend the underlying case and to bring its related third-party claim against GOPAC. However, as the parties readily acknowledged during trial, the *Long/Smith* cases were hard fought precisely because both GOPAC and Fairbank understood that the verdict at this first trial would have significant implications on all of the other 2009 Northeast Outbreak cases. In fact, in another related 2009 Northeast Outbreak case pending on this Court's docket, the Court has held that the verdict achieved in this case collaterally estops GOPAC from re-litigating some of the key questions resolved by the *Long/Smith* jury. See generally Jones, 2013 WL 6019294. Thus, the Court finds that the amount expended on attorney's fees and expenses is reasonable when viewed in the overall context of the litigation surrounding the 2009 Northeast Outbreak and the fact that the *Long/Smith* case was the first case to go to trial.[4]

GOPAC raises only two specific objections to items included in Fairbank's fee request: (1) multiple counsel at depositions and (2) fees and costs associated with Fairbank's expert Thomas Hoffman, who did not ultimately testify at trial and who, GOPAC now argues, produced an "inaccurate" expert report. First, the Court notes that GOPAC has not made any effort to calculate how much of the fee request should be attributable to these two objections. This failure to specifically request a reduction by amount and direct the Court to the applicable portions of the records is a standalone basis for overruling these specific objections.

In any event, the Court finds both objections to be without substantive merit. With respect to multiple counsel attending depositions, Fairbank replies that "GOPAC itself sent numerous attorneys to multiple depositions." (Fairbank Reply (ECF No. 436) at 2.)

---

[4] Despite the impact of the *Long/Smith* verdict on other pending cases, the Court notes that Fairbank is not seeking fees for work done on other 2009 Northeast Outbreak cases in connection with this fee request. See Stevens Aff. ¶15.

Additionally, other federal courts have recognized that in complex cases "it is standard practice for at least two attorneys to appear at most proceedings," including depositions. Communities for Equity v. Michigan High Sch. Athletic Ass'n, 1:98-CV-479, 2008 WL 906031 (W.D. Mich. Mar. 31, 2008). In this case, multiple depositions were shown as part of the evidence received at trial and many of the depositions involved experts or other technical evidence. In short, in the absence of a more specific objection to this allegedly duplicative staffing, the Court declines to reduce the fee request for having multiple attorneys at depositions.

Turning to GOPAC's next objection, the Court considers Thomas Hoffman, an expert retained by Fairbank who produced an expert report but ultimately did not take the stand at trial. Federal courts have generally allowed for recovery of expenses related to non-testifying experts under federal statutes that contain fee-shifting provisions. See, e.g., Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 717 (3d Cir. 2005) ("It is not unreasonable to expect that attorneys will rely on experts to educate them as to scientific and technical issues involved in a given case."). In the context of the contractual indemnification at issue here, the Court readily finds that the costs incurred by retaining Thomas Hoffman and Fairbank's other experts are clearly expenses that fall within the Fairbank Guarantee and these expenses would have been incurred by any reasonable client in the context of this litigation. The Court will not exclude these expenses based on the objections proffered by GOPAC.

Therefore, the Court finds that Fairbank is entitled to recover the requested fees and expenses totaling $2,434,788.44.

### C. Prejudgment Interest

It is clear that New York law allows for prejudgment interest on the attorneys' fees and expenses awarded pursuant to this Order. See N.Y. C.P.L.R. §§ 5001 & 5004. As of June 2013,

Fairbank estimated the prejudgment interest on its requested fees and expenses totaled $429,413.48. GOPAC has not specifically objected to this requested amount of prejudgment interest. Therefore, the Court hereby ORDERS Fairbank to submit an updated calculation of the prejudgment interest in a format similar to its prior submission (ECF No. 433-1). This updated calculation shall be filed within seven days of this Order. Absent receipt of a specific objection to this updated calculation within seven days of its filing, GOPAC will be deemed obligated to pay the prejudgment interest listed in this updated filing.

### III. CONCLUSION

For reasons stated herein, the Court GRANTS Fairbank's Renewed Application for Attorneys' Fees & Costs (ECF No. 433) and ORDERS that GOPAC pay attorneys' fees and expenses in the amount of $2,434,788.44, plus prejudgment interest in an amount to be determined in accordance with this Order.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 27th day of March, 2014.